IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LINCARE HOLDINGS INC. and LINCARE
LICENSING INC.,

                          Plaintiff,

        v.

DOXO, INC.,

                          Defendant.

NO. 8:22-CV-2349-VMC-AEP

DEFENDANT DOXO, INC.'S
MOTION FOR SUMMARY
JUDGMENT

## I.   INTRODUCTION

Defendant Doxo, Inc.'s ("Doxo") all-in-one online bill pay service and corresponding use of Plaintiffs Lincare Holdings Inc.'s and Lincare Licensing Inc.'s (collectively "Lincare") trademarks is reasonable and justified, and nothing here warrants contradicting a clear and well-reasoned decision in Doxo's favor in a highly analogous case before another federal court.   Lincare's cannot present evidence justifying further litigation, particularly because its purported evidence of consumer confusion is unreliable and de minimis, and long-recognized principles of trademark law mandate summary judgment in Doxo's favor.

## II.   STATEMENT OF MATERIAL FACTS

### A.   Doxo's Business and Biller Pages

1.      Online multi-party bill payment is not new.   Banks have long provided all-in-one bill payments to billers on their customers' behalf.   [Shivers Dep. 29:11-17].[1]

---

[1] Deposition transcripts and declarations will reference the deponent or declarant by last name, followed by page/line numbers or paragraphs, as well as the exhibit (if appropriate).   If a deposition took place over two days, the citations are prefaced with "First" or "Second."

2.      Doxo offers a secure, all-in-one bill pay service, allowing users to organize accounts, manage due dates, and pay bills to any of over 120,000 billers using any bank or card payment account.  [Shivers Decl. ¶ 2].

3.      Doxo does not charge a transaction fee for payments using a linked bank account, and Doxo users can also use other payment methods—including debit, credit, and Apple Pay—not necessarily offered by banks or billers directly.  [Shivers Dep. 194:10-14; Shivers Decl. ¶ 6].

4.      Doxo users can subscribe to doxoPLUS for access to more features, including waived transaction fees for eligible debit cards, real-time credit score monitoring, loss coverage for identity theft, and identity restoration services. [DOXO_00560; Shivers Dep. 194:17-19].

5.      Doxo's directory includes thousands of billers in the medical industry, including Preferred Home Health Providers, Provider Preferred Home Health, American Home Companion, and American Home Care, as well as others in different industries, such as LoanCare and Landcare.  [DOXO_005354-64, 5424-25, 5374-75, 5437-39, 005348-50, 5362-64].

6.      Doxo also works with billers (at no cost to the biller) to enable direct electronic payments and otherwise ensure that payments are routed as efficiently as possible, by, for example, requiring certain formatting for biller account numbers. [Shivers Dep. 158:12-16].

7.      To pay a bill, Doxo users must first locate a landing page dedicated to the specific biller.  [Shivers Decl. ¶¶ 3-4].

8. Doxo biller pages use a standard template. In addition to Doxo's own branding, every biller page on Doxo's website includes a description of the biller, with contact and related information, and several Doxo-specific data points (*e.g.* maps, payment statistics, overlapping billers, frequently asked questions ("FAQs")). [*Id.*].

9. The structure of Doxo biller pages—with the website owner's mark at the top left, other branding across the top, and information about an unaffiliated entity lower on the page—is shared across many directory-based websites, including Yelp, Angie's List, and the Better Business Bureau. [Rushton Report ¶¶ 22, 51-52].

10. Doxo biller pages are designed to, among other things, differentiate billers from each other because many have similar names. [Shivers Dep. 130:17-25]

11. Doxo biller pages state, at the top beneath the pay button, that "doxo enables secure bill payment on your behalf and is not an affiliate of or endorsed by [the biller,]" and that "doxo is not an affiliate of [the biller]. Logos and other trademarks within this site are the property of their respective owners. No endorsement has been given nor is implied." [Shivers Decl. ¶¶ 3-4].

12. FAQs may also ask "Is doxo affiliated with [the biller]?" The answer is: "No, doxo is not affiliated with or endorsed by [the biller]. Doxo provides a 3rd party bill payment and protection service." [*Id.*].

13. Doxo biller pages include a left-side panel where users can "Organize & pay all your bills in one place," and add other billers to their Doxo account. [*Id.*].

14. Doxo only uses billers' logos to distinguish between multiple billers, in lists, shrinking the logos to the approximate size of the accompanying text. [*Id.*].

15.     Doxo users cannot complete a payment from the biller pages.  After entering an amount and pressing the "Pay Bill" button, users see five additional pages, each of which prominently includes Doxo's branding.  [*Id.* ¶¶ 5-9].

16.     These checkout pages require users to accept Doxo's terms of service and repeatedly notify users that Doxo is an independent and unaffiliated third-party service.  [*Id.*].

17.     Before sending a payment, Doxo users must confirm they understand the delivery date and, if too late, should "not complete payment here.  Instead, contact the company directly to make your payment."  [*Id.* ¶ 8].

18.     After submitting a payment, Doxo users see a confirmation page with tracking information that allows transactions to be cancelled.  [*Id.* ¶ 9].

19.     Doxo sends users an email receipt linking to a similar tracking page that also lists "other billers in your area" the user can pay through Doxo.  [*Id.* ¶ 8].

**B.     Lincare and Its Affiliates' Dedicated Bill Pay Options**

20.     ████████████████████████████████████████████

████████████████████████████████████████████

[First Johnson Dep. 41:24-42:3].

21.     ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████



[LIN00000001-31].

22. ████████████████████████████████ [LIN00027779-27801].

23. ████████████████████████████████

[LIN00000001-31].

24. ████████████████████████████████

████████████████████████████████ [First Johnson Dep. 43:15-20; LIN0001840].

25.     Lincare mails out ████████████████ patient bills every month, directing all patients to www.Lincare.com for online payments.   [LIN00019548, LIN00001840].

26.     The website at www.Lincare.com includes a link to "Bill Pay," which leads to www.billerpayments.com, which does not display any Lincare marks, includes a copyright notice from Alacriti Payments, and addresses Canadian customers (the "Alacriti Portal").  [First Johnson Dep. 95:11-96:17; LIN00002248-49; DOXO_004664].

27.     Although results vary depending on the search and user, online searches for phrases like "pay Lincare bill" or "pay Lincare bill online" typically yield multiple

links to different pages on Lincare's website, as well as a link to the Alacriti Portal and a link to Doxo's Lincare-specific biller page. Search results for some Lincare links and for the Alacriti Portal do not describe the underlying webpage. [Mandel Report ¶¶ 69-77; Bringman Dep. 163:7-164:7, Bringman Dep. Ex. 15].

28.     Myrtle Bell, a former Lincare affiliate employee, testified that ███████



███ [Bell Dep. 10:21-22].[2]

29.     ████████████████████████████████ [First Johnson Dep. 137:5-24; LIN00000042-58; Bringman Dep. 155:10-20].

## C.     Doxo Payments to Lincare and Its Affiliates

30.     A Doxo user first paid Lincare through Doxo in May 2019. Doxo users first paid mdINR, American HomePatient, Preferred Homecare, and Convacare later in 2019. [Doxo's Amended Responses to Lincare's First Interrogatories, pp. 3-4].

31.     Since then, Doxo has facilitated approximately ████ payments to Lincare, ███ payments to mdINR, ███ payments to American HomePatient, ███ payments to Preferred Homecare, and ██ payments to Convacare. [DOXO_005525].

32.     Doxo has not transmitted any payments to Specialized Medical Services. [Doxo's Amended Responses to Lincare's First Interrogatories, pp. 3-4].

---

[2] Doxo does not currently possess certified copies of all deposition transcripts cited herein. Uncertified transcripts still "may be considered by the Court on summary judgment." *Bates v. United States*, No. CV 2:13-00051-KD-C, 2015 WL 4999740, at *5 (S.D. Ala. Aug. 21, 2015).

33.     Doxo has received approximately ███ customer support requests for these nearly ████ transactions, a vast majority of which are routine payment status checks.  [DOXO_005525; Parks Dep. 67:22-68:5; Shivers Dep. 226:6-16].

34.     Myrtle Bell used Doxo ████████████████████████ ██████████████████████████████████████████ ██████████████████████████ [Bell Dep. 28:4-9, 29:19-30:7].

35.     Since May 2019, Lincare and its affiliates have issued ████████████ invoices, and ████████ web users have visited Lincare's website. [First Johnson Dep. 51:5-10; LIN00019548; LIN00000067].

36.     In that same time period, Lincare has received ████████████ customer service calls.  [Second (30(b)(6)) Johnson Dep. 10:5-6; First Johnson Dep. 106:22-25].

37.     ████████████████████████████████ ██████████████████████████████████████ ██████████████████████████████ [Second (30(b)(6)) Johnson Dep. 111:21-24, 98:7-9; *see, e.g.*, LIN00001857, 1865-66, 1875, 1877, 1883, 1887, 1910-12, 1923, 1937-38, 1991-92, 1996, 2011, 2048-49, 2958-61, 3267-69].

38.     ████████████████████████████████ ███ [Second (30(b)(6)) Johnson Dep. 67:13-16].

39.     ████████████████████████████████ ██████████ [Second (30(b)(6)) Johnson Dep. 76:24-77:4; 83:12-16].

40.     ████████████████████████████████ ████████████████████ [LIN00002923-LIN00002924;  Second

-7-

(30(b)(6)) Johnson Dep. Ex. 20; LIN00002929; LIN00001907-08, 1982, 2004-05, 2023, 2080-81, 2084-85, 2125-26].

41.   ████████████████████████████████████

████████████████████████ [Second (30(b)(6)) Johnson Dep. 113:12-114:24; Second Jones Dep. 15:24-18:25].

## III.   ARGUMENT

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating "no genuine issues of material fact" that must be decided at trial, after which the burden "shift[s] to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment."  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Parties opposing summary judgment may not rely on mere denials of the allegations but must adduce some evidence showing that material facts are in issue.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).  This evidence must demonstrate each element essential to the nonmoving party's claim(s) such that a reasonable jury could find in their favor.  *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).  If no reasonable jury could do so, the Court must grant summary judgment.  *Anderson*, 477 U.S. at 249–50.

## A.   Doxo's Use of Lincare's Marks Is Protected by the Nominative Fair Use Doctrine

At its core, the Lanham Act seeks to ensure that owners of trademarks can

generate and benefit from goodwill associated with their marks, while simultaneously ensuring that consumers can distinguish among competing producers. *See* 1 McCarthy on Trademarks and Unfair Competition § 2:2 (5th ed., 2023). In typical trademark infringement cases, the defendant is accused of offering products or services under a mark that is similar to the plaintiff's mark. Here, however, there is no dispute that Doxo uses the LINCARE mark to refer to Lincare itself. Because Doxo "has used the plaintiff's mark to describe the plaintiff's product, even if the defendant's ultimate goal is to describe his own product," special considerations apply. *Commodores Ent. Corp. v. McClary*, 314 F. Supp. 3d 1246, 1249 (M.D. Fla. 2018). In particular, the test for "nominative fair use" is whether the defendant's use of the plaintiff's mark is reasonable and unlikely to cause confusion. *Id.*

While the Eleventh Circuit has not explicitly adopted a particular test for nominative fair use, courts in the Eleventh Circuit and elsewhere routinely consider three factors designed to evaluate nominative fair use: whether "(1) Plaintiff's product or service is not readily identifiable without use of the trademark; (2) Defendants used only so much of the mark as is reasonably necessary to identify the plaintiff's product or service; and (3) the user of the mark does nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder." *Id.*; *see also Ford Motor Co. v. O.E. Wheel Distributors, LLC*, 868 F. Supp. 2d 1350, 1368 (M.D. Fla. 2012) (applying the three-factor nominative fair use test); *Suntree Techs., Inc. v. EcoSense Int'l, Inc.*, 802 F. Supp. 2d 1273, 1282 (M.D. Fla. 2011) (collecting cases), *aff'd*, 693 F.3d 1338 (11th Cir. 2012). Where each prong is satisfied, the defendant's use of a

trademark does not constitute infringement.  *Id.*

Here, Doxo satisfies each element.

### 1.   The Western District of Washington Held That Doxo's Use of Marks Constitutes Fair Use

The Western District of Washington has already considered a dispute nearly identical to this one, and found that Doxo's use of marks constituted fair use as *a matter of law.  CMRE Fin. Servs. Inc. v. Doxo Inc.*, No. 2:22-CV-00298-RAJ-BAT, 2022 WL 16701259, at *10 (W.D. Wash. Oct. 7, 2022), *report and recommendation adopted*, No. 2:22-CV-00298-RAJ-BAT, 2022 WL 16699090 (W.D. Wash. Nov. 3, 2022).

In *CMRE*, the plaintiffs alleged Doxo's website confused their customers and led users to believe plaintiffs authorized Doxo to collect payments on their behalf.  *Id.* at *1.  After reviewing Doxo's website and the numerous bill payment pages consumers need to complete to submit payment—which are replete with Doxo branding, disclaimers, and standalone features—the court held that no "'reasonably prudent consumer' in the relevant marketplace could have interpreted Doxo's website as being endorsed or sponsored by Plaintiffs." *Id.* at *9.

This lawsuit essentially rehashes the arguments presented and decided in *CMRE*.  Doxo's biller pages and checkout experience for Lincare are materially identical to those at issue in the *CMRE* litigation, with the same abundance of Doxo branding and disclaimers, the same unavoidable features unique to Doxo, and the same uses of biller marks to identify billers.  The same, thoroughly reasoned result from *CMRE* is applicable here.

### 2.      Doxo Cannot Identify Lincare Without Using Lincare's Trademarks

As in *CMRE*, the first nominative fair use factor is easily satisfied because it would be difficult (if not impossible) for consumers to search for, identify, and pay Lincare and its affiliates on Doxo's website without using Lincare's marks.  *CMRE*, 2022 WL 16701259, at *6 ("It is evident … that Doxo's bill-paying system hinges on its users' ability to correctly identify a particular biller among thousands of other billers in Doxo's system.")  "To preclude Doxo from using Plaintiffs' (and other billers') service marks would undermine the functionality of Doxo's consumer service, a result that the first nominative fair use factor is meant to prevent."  *Id.*

Using a trademark is appropriate where it is "the most straightforward, obvious and truthful way to describe" the service or product associated with that mark.  *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1177 (9th Cir. 2010).  That a descriptive substitute *exists* is insufficient.  "For example, an aftermarket automobile dealer might advertise 'wheels fit for FORD MUSTANG,' or a computer software company might sell 'software compatible with both WINDOWS and APPLE.'" *Ford Motor Co. v. O.E. Wheel Distributors, LLC*, 868 F. Supp. 2d at 1368; *see also New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 306 (9th Cir. 1992) ("Much useful social and commercial discourse would be all but impossible if speakers were under threat of an infringement lawsuit every time they made reference to a person, company or product by using its trademark.").

Here, it is clear that Doxo users could not distinguish Lincare and its affiliates from over 120,000 billers on Doxo's website—such as distinguishing "Preferred

Homecare" from "Preferred Home Health Providers" and "American Homepatient" from "American Home Companion"—without using Lincare's marks. *See* DOXO_005354-64, 5374-75; s*ee also, e.g.*, *Ghost Controls, LLC v. Gate1Access LLC.*, No. 5:20-CV-288-RBD-PRL, 2021 WL 1948350, at *2 (M.D. Fla. Apr. 29, 2021) ("Gate1Access would not be able to explain that its product is compatible with the Ghost Controls's products without using Ghost Controls's name in its listing."), *report and recommendation adopted sub nom. Ghost Controls, LLC v. Gate1Access LLC*, No. 5:20-CV-288-RBD-PRL, 2021 WL 1946697 (M.D. Fla. May 14, 2021). The first nominative fair use factor is satisfied.

### 3. Doxo Did Not Use More of Lincare's Marks Than Necessary

The second factor—measuring whether the plaintiff's mark was used more than reasonably necessary—also supports summary judgment for Doxo. "What is reasonably necessary to identify the plaintiff's product differs from case to case," and where "the description of the defendant's products depends on the description of the plaintiff's product, more use of the plaintiff's trademark is reasonably necessary to identify the plaintiff's product." *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1154 (9th Cir. 2002) (cleaned up). It is necessary, for example, to use "Ford's trademarks in order to inform potential customers that [defendant's] wheels would fit Ford vehicles." *Ford Motor Co. v. O.E. Wheel Distributors, LLC*, 868 F. Supp. 2d 1369; s*ee also id*. ("[I]t is doubtful whether Franklin Mint would be able to sell its 'Diana, Princess of Wales Porcelain Portrait Doll' without prominent reference to Princess Diana.").

By the same token, it is necessary for Doxo to use billers' marks to distinguish

billers and to provide information about those billers.  Doxo only once includes billers' names in large font, without stylization, in order to clearly differentiate otherwise comparable biller pages.  Shivers Decl. ¶¶ 3-4; *see also, e.g.*, *Playboy*, 279 F.3d at 802 (use in "banner advertisements and headlines" satisfied the second factor); *CMRE*, 2022 WL 16701259, at *7 ("trademarks can be used nominatively in 'enhanced' headings.").  Other uses of billers' marks are similarly reasonable, providing (mostly Doxo-specific) information about the biller and bill pay process.  The various informational fields on Doxo biller pages use billers' marks sparingly, for example, and only do so where necessary to compare the particular biller to others in Doxo's directory or explicitly disclaim any affiliation between Doxo and the biller.

The "second factor does not implicate the *number* of uses of a mark, but rather the *nature* of the uses." *CMRE*, 2022 WL 16701259, at *6.  Because Doxo cannot operate its bill pay and informational services without clearly identifying, differentiating, and routing payments to thousands of billers, "more use of the plaintiff's trademarks is reasonably necessary to identify the plaintiff's product[.]" *Cairns*, 292 F.3d at 1154; *see also Int'l Payment Servs., LLC v. CardPaymentOptions.com, Inc.*, No. 2:14-CV-02604-CBM-JC, 2015 WL 12656280, at *4 (C.D. Cal. June 5, 2015) (second factor satisfied as a matter of law despite word and logo mark appearing over 50 times, since it "merely demonstrate[d] referential use of Plaintiff's Mark").

Doxo's use of Lincare's marks is purely referential and reasonably necessary to facilitate bill payment to, and provide information about, Lincare.  The second factor is satisfied.

### 4.    Doxo Expressly Denies Affiliation With, or Endorsement By, Lincare

Lastly, Doxo has done nothing that suggests sponsorship or endorsement by Lincare or its affiliates.  In addressing the third nominative fair use factor, "focus must be on the reasonably prudent consumer in the marketplace." *Toyota*, 610 F.3d at 1176 (explaining that "the relevant consumer" in the context of an auto broker's website "is a reasonably prudent consumer accustomed to shopping online; the kind of consumer who is likely to visit the [auto broker's] website when shopping for an expensive product like a luxury car").  "Unreasonable, imprudent and inexperienced web-shippers are not relevant." *Id.*  "Mere use of a trademarked term to describe something is not enough to suggest sponsorship or endorsement."  *Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 463, 497 (S.D.N.Y. 2008), *remanded in part on other grounds*, 600 F.3d 93 (2d Cir. 2010).

In evaluating whether a use implies sponsorship or endorsement, the existence of disclaimers and the presence of the defendant's own branding is strong evidence of fair use.  *See MPS Ent., LLC v. Abercrombie & Fitch Stores, Inc.*, No. 11-24110-CIV, 2013 WL 3288039, at *13 (S.D. Fla. June 28, 2013) (granting summary judgment on nominative fair use grounds in part because defendant "expressly disassociated" itself from the plaintiff).  Courts broadly recognize that disclaimers and other "inclusion of such words will usually negate any hint of sponsorship or endorsement[.]" *Toyota*, 610 F.3d at 1177; *see also, e.g.*, *Century 21 Real Est. Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 231 (3d Cir. 2005) ("Far from unimportant, such a disclaimer must be considered in

-14-

determining whether the alleged infringer accurately portrayed the relationship that existed between plaintiff and defendant."); *Beata Music LLC v. Danelli*, No. 18-CV-6354 (JGK), 2022 WL 61862, at *9 (S.D.N.Y. Jan. 6, 2022) (granting summary judgment on nominative fair use grounds in part where "movants took pains to ensure that their promotional materials reflected the true and accurate relationship between" the parties).

Once again, the court in *CRME* thoroughly examined this issue and found it also weighed in Doxo's favor.  Noting that Doxo's "disclaimers are not in any smaller font than other text on the biller page and are not" otherwise easy to miss prior to checkout, the court also recognized that "disclaimers appear numerous times and alongside other items – list of overlapping billers, payment location map, distinctive Doxo word mark, logo, and banners, and colors – all of which suggest that it is not plausible that any reasonable consumer accustomed to navigating the internet would be confused."  *CMRE*, 2022 WL 16701259, at *8.

The same analysis applies here.  A reasonable consumer seeking to pay bills online would not believe that Lincare or its licensees have endorsed Doxo's site. Indeed, one of Lincare's former employees—*who Plaintiffs claimed was confused by Doxo*—confirmed that when she saw the Doxo biller page for Lincare she ██████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████ Bell Dep. 28:4-9, 29:19-30:7; Lincare Initial Disclosures. ██████████████████████████, Doxo biller pages and its checkout process are

replete with disclaimers and various other items that make it clear Doxo is independent and not affiliated with any one biller.  *Id.*; Shivers Decl. ¶¶ 3-10.  Doxo's numerous disclaimers alone are sufficient to prevent the appearance of sponsorship or endorsement.

Doxo biller pages are *also* covered in its own prominent branding, including the DOXO trademark, the Doxo logo, and the top banner in Doxo blue.  Shivers Decl. ¶¶ 3-4; *see Lichtenegger*, 913 F.3d at 897 (emphasizing that the defendants "advertised the seminar under [their own] banner" in holding that no reasonable consumer could be confused).  Countless well-known and oft-used websites adopt a similar structure, including Yelp, Angie's List, and the Better Business Bureau.  *See* Rushton Report ¶¶ 22, 51-52.  In light of both Doxo's prominent branding and the disclaimers and other items on Doxo biller pages making clear that Doxo is an independent site (*e.g.*, a list of overlapping billers and a payment location map), it is implausible that any reasonable, modern consumer would be confused.

As such, the third factor is satisfied, as is the nominative fair use test overall.

## B.    Likelihood of Confusion

While many courts in the Eleventh Circuit do not look any further than the three-pronged nominative fair use test, the Eleventh Circuit has not definitely closed the door to considering other, more traditional trademark elements.  *See Parsons v. Regna*, 847 F. App'x 766, 773-74 (11th Cir. 2021); *see also Microsoft Corp. v. Guirguis*, No. 20-CV-24514, 2022 WL 1664181, at *5 (S.D. Fla. Mar. 30, 2022) ("The Eleventh Circuit… has applied a test substantially similar to that employed in the Ninth

Circuit."). The standard trademark infringement analysis in this Circuit considers seven "likelihood of confusion" factors but, even when courts do consider them, most are simply inapplicable to nominative or referential trademark use. *Suntree Techs.*, 802 F. Supp. 2d at 1281 n.4 ("[F]actors two through five are inappropriate in this case because they all would require a comparison of Suntree's and Defendants' marks; such comparison is illogical in this case because Derrico used Suntree's mark to refer to Suntree's own product.... Factor one is also irrelevant"); *see also Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 155 (4th Cir. 2012) (district court did not err by not addressing most likelihood of confusion factors); *Parsons*, 847 F. App'x at 773 n.13 (favorably citing *Rosetta Stone*). The two remaining factors—the defendant's intent and evidence of actual confusion—further support summary judgment.

### 1. Doxo Does Not Intend to Deceive Consumers

Doxo does not intend to deceive consumers, and its lack of intent suggests there is no likelihood of confusion. This factor is specifically concerned with an intent to actively deceive consumers, not simply an intent to reproduce the plaintiff's mark. *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1293 (11th Cir. 2018).

This factor clearly weighs in Doxo's favor. No malintent can be attributed to Doxo's use of Lincare's marks because Doxo repeatedly disclaims any affiliation with Lincare and otherwise presents its services in a way that makes it clear Doxo offers an independent, multi-bill service. *See e.g., Mary Kay, Inc. v. Weber*, 601 F. Supp. 2d 839, 858 (N.D. Tex. 2009) (noting that a prominent disclaimer "suggests that the defendants did not intend to confuse customers"); *Disney Enterprises, Inc. v. Sarelli*, 322

-17-

F. Supp. 3d 413, 437 (S.D.N.Y. 2018) (granting summary judgment in part because disclaimers "are not evidence of bad faith at all" and, "[t]o the contrary, they are more likely to put customers on notice that [defendant]'s services were not sponsored or affiliated by Plaintiffs"). That Doxo's use of biller marks constituted nominative fair use had also been endorsed by a federal magistrate judge before Lincare initiated this action. *CMRE*, 2022 WL 16701259, at *10. Lincare has presented no evidence that Doxo intends to deceive consumers, and this factor also supports a finding of no likelihood of confusion.

### 2. Lincare's Purported Evidence of Actual Confusion is Unreliable, Inadmissible, and *De Minimis*

The final likelihood of confusion factor evaluates evidence of actual confusion. Any confusion caused by a mark's owner or a nonparty, however, is "insufficient to raise an inference of *actual confusion*;" the confusion must specifically arise from the challenged use of a trademark. *See Pro Video Instruments, LLC. v. Thor Fiber, Inc.*, No. 6:18-cv-1823-GAP-LRH, 2020 WL 11421203, at *12 (M.D. Fla. Apr. 22, 2020) ("Even assuming the customer was confused, there is no evidence showing that . . . such confusion arose from Defendant's use of the marks at issue."); *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1361 (11th Cir. 2007) (actionable confusion must "have arisen because of" defendant's use of the trademark in question). Moreover, carelessness on the part of the consumer is also distinct from "actual confusion." *Uber Promotions, Inc. v. Uber Techs., Inc.*, 162 F. Supp. 3d 1253, 1272 (N.D. Fla. 2016) (misdirected communications evidence of "inattentiveness or carelessness," not

-18-

confusion); *Wish Atlanta, LLC v. Contextlogic, Inc.*, No. 4:14-CV-51 (CDL), 2015 WL 7761265, at *11 (M.D. Ga. Dec. 2, 2015) ("Mere inadvertence on the part of the person making a phone call does not constitute actual confusion.").

Actual confusion also does not depend on the *number* of instances; it is determined by the *quality* of the evidence.  Nonspecific and vague evidence, for example, does not suggest that reasonably prudent consumers are likely to be actionably confused. *Superior Consulting Servs. v. Shaklee Corp.*, No. 19-10771, 2021 WL 4438518, at *9 (11th Cir. 2021) (district court appropriately gave little weight to "50 or so… vague calls" where it was unclear what callers may have found confusing); *Welding Servs*, 509 F.3d at 1361 (the "probative value" of questions from customers is "very low" where there's "uncertainty about what might have prompted the inquiries").

Similarly, self-serving and hearsay evidence prepared by the plaintiff is either inadmissible or afforded little weight.  *See, e.g.*, *Nakava, Ltd. Liab. Co. v. S. Pac. Elixir Co.*, No. 19-cv-81128, 2020 WL 4601641, at *9-10 (S.D. Fla. Aug. 10, 2020) (employee affidavit regarding confusion was inadmissible hearsay and otherwise insufficient); *Nassau v. Unimotorcyclists Soc'y of Am., Inc.*, 59 F. Supp. 2d 1233, 1241 (M.D. Fla. 1999) (testimony from secretary employed by plaintiff insufficient to establish actual confusion).

Finally, even clear instances of relevant consumer confusion do not support a finding of trademark infringement if they are dwarfed by the number of consumers who *haven't* expressed confusion.  *See, e.g.*, *Wish Atlanta*, 2015 WL 7761265, at *11-12

(refusing to consider fifty-plus employee-prepared call logs for the alleged content of the calls, and otherwise finding the amount de minimis in light of "numerous transactions," "thousands of telephone calls," and "millions of transactions"); *Vital Pharms., Inc. v. Monster Energy Co.*, 553 F. Supp. 3d 1180, 1271 (S.D. Fla. 2021) (suggesting that, when "millions upon millions of people" are involved, actual confusion would result in a "brigade of confounded supporters"); *Passport Health, LLC v. Avance Health Sys., Inc.*, 823 F. App'x 141, 152 (4th Cir. 2020), *as amended* (Aug. 17, 2020) ("[E]ven assuming that all forty-one clicks on the advertisement were by confused consumers, that confusion is de minimis" in light of significant other web traffic).

Lincare will rely on two pieces of evidence to show actual confusion: (1) unreliable and inadmissible call summaries drafted by customer service agents ███ ███████████████████████, and (2) a fatally flawed consumer survey. Neither is sufficient evidence of actual confusion.

**Call Summaries.** Lincare's customer support call summaries are unreliable, inadmissible, and *de minimis*. First, █████████████████████████████████ ████████████████████████████████████████████████████████████ █████████████████████████████████████████ *See* Second (30(b)(6)) Johnson Dep. 76:24-77:4; 83:12-16. This bias is reflected in the agent summaries, making them wholly unreliable, and hearsay statements of customers cannot be considered for their substance.

Second, in addition to the highly biased manner in which the Doxo-related call

logs were prepared, Lincare did not produce any evidence that allows a determination of which trademark was at issue.   In other words, from the evidence produced by Lincare, the Court cannot identify whether a caller was contacting Lincare because of a Convacare bill, or an mdINR bill, or a bill from an affiliate in Doxo's directory not involved in this case such as Medical West.   Second (30(b)(6) Johnson Dep. 56:13-16. Without the ability to distinguish these calls, none of them can be considered evidence of confusion as to a specific mark.

Third, of the ███████████ customer support calls Lincare receives each day, only around ███ involved Doxo *in any capacity*, despite Doxo processing nearly ██████ payments to Lincare and its affiliates.   Second (30(b0(6)) Johnson Dep. 111:21-24, 98:7-9.   And the vast majority of these logs are unrelated to "confusion" and ██████ ████████████████████████████████████████████████████████. *Id.*

Fourth, the call logs do not demonstrate that any confusion was *not* caused by Lincare itself.   The Alacriti Portal has no Lincare branding, Lincare's website and search results are poorly labeled, and patients of Lincare's affiliates are directed to Lincare's own website.   Further reinforcing Lincare's lack of common trademark hygiene, ███████████████████████████████████████████████████████ ███████████████.   Any confusion caused by these factors has "no explicit connection to" Doxo's use of Lincare's marks, and is not proof of likelihood of confusion. *Welding Servs., Inc.*, 509 F.3d at 1361.

**Consumer Survey.**   Lincare's expert survey does not suggest any actionable confusion either.   As a threshold matter, the survey tested, at best, *initial interest*

-21-

*confusion* and not confusion at the *point of sale*.  *See* Doxo's Mot. to Excl. Experts.  As Ms. Butler recognizes, her survey only measures consumer confusion arising from Google searches and Doxo's Lincare biller page, not confusion to and through checkout.  The Eleventh Circuit has repeatedly declined to adopt the theory of "initial interest confusion," and consumers that realize the defendant is not affiliated with the plaintiff before purchasing the defendant's goods or services are not "actually," actionably confused.  *Playnation Play Sys. v. Velex Corp.*, 924 F.3d 1159, 1167 n.4 (11th Cir. 2019); *see also Suntree Techs.*, 802 F. Supp. 2d at 1281 ("[T]he Eleventh Circuit has suggested that—at least where the initial interest confusion is remedied prior to the consummation of a sale—such confusion is not sufficient to satisfy the likelihood-of-confusion test.").

The survey is also fatally flawed—as discussed in greater detail in Doxo's concurrent *Daubert* motion—because it uses an erroneous survey population and does not reflect actual marketplace conditions.  Unrealistic and otherwise flawed surveys do not demonstrate a likelihood of actual confusion.  *See Smith v. Wal-Mart Stores, Inc.*, 537 F. Supp. 2d 1302, 1334–35 (N.D. Ga. 2008) (because plaintiff's expert "surveyed an overbroad universe, failed to adequately replicate the shopping experience, and asked leading questions," the "survey is so flawed that it does not establish a genuine issue of material fact with regard to actual confusion, much less *prove* actual confusion"); s*ee also Frehling Enterprises, Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1341 (11th Cir. 1999) ("This Circuit… has moved away from relying on survey evidence.").

Finally, the survey was conducted solely in connection with the LINCARE

mark.  No survey was conducted regarding the other five marks.  Thus, if any weight were given to the survey, it would be strictly limited to the LINCARE mark, and this factor clearly weighs in favor of Doxo as to the remaining marks.

There is no reliable evidence of actual confusion.  To the contrary, the lack of confusion despite the high volume of transactions and customer support interactions demonstrate that reasonably prudent consumers are unlikely to be confused.  This factor weighs in favor of Doxo and, when considered alongside the other factors and tests discussed above, demonstrate that Doxo is entitled to summary judgment on Lincare's trademark and related claims.

## C.    All Claims Involving Specialized Medical Services Should be Dismissed

Lincare's claims regarding the SPECIALIZED MEDICAL SERVICES mark are particularly unwarranted.  Lincare does not own a trademark registration for the mark and has not produced any evidence that this at-best descriptive mark has acquired distinctiveness in the marketplace.  They cannot do so.  Specialized Medical Services does not even have its own website, and Lincare's own employees ███████ ████████████████████████████.  First Jones Dep. 115:3-5.  Additionally, because Doxo has not transmitted a single payment to Specialized Medical Services, there cannot be any actual confusion.  DOXO_005525.  Lincare's survey does not capture any purported confusion regarding use of the mark either.  Without more, Lincare cannot satisfy its burden on any claims regarding Specialized Medical Services and those claims should be dismissed.

### D.   Lincare's Tortious Interference Claims Should Be Dismissed

"To succeed in a claim for tortious interference of business relations under Florida law, 'the plaintiff must demonstrate (1) the existence of a business relationship," with "identifiable customers," "under which the plaintiff has legal rights; (2) an intentional and unjustified interference with the relationship; and (3) damage to the plaintiff as a result of the tortious interference with that relationship.'" *Coach Servs., Inc. v. 777 Lucky Accessories, Inc.*, 752 F. Supp. 2d 1271, 1273 (S.D. Fla. 2010) (citations omitted).   Here, Lincare is ███████████ ████████████████████████████████████████████████████ ████████████.   Second (30(b)(6) Johnson Dep. 113:12-114:24; Second Jones Dep. 15:24-18:25.   That's fatal to the claim, and it should be dismissed based on that alone. *Id.*

Lincare has also failed to provide any evidence showing Doxo's intentional or unjustified interference with its customers, or that Doxo caused any harm to Lincare. Doxo instead facilitated Lincare customers' *compliance* with their contractual obligations, sending payments to satisfy Lincare bills while clearly and repeatedly communicating when those payments would arrive.   And Lincare has no evidence of damages: it cannot identify a lost business relationship, and Lincare has produced no expert to opine on any non-trademark damages.   Because there is no issue of fact and Lincare cannot support any elements of its claim, the Court should grant summary judgment on Lincare's tortious interference claim.

## IV.    CONCLUSION

For the foregoing reasons, Defendant Doxo, Inc. respectfully requests that the

Court grant its Motion for Summary Judgment, dismiss all claims brought by Lincare,

and enter judgment in Doxo's favor.

Respectfully submitted,

Dated: November 17, 2023              By:  */s/ William C. Rava*

Brian R Gilchrist,                         William C. Rava, admitted *pro hac vice*
FL Bar #774065                             WRava@perkinscoie.com
ALLEN, DYER, DOPPELT +                     Alison R. Caditz, admitted *pro hac vice*
GILCHRIST, PA                              Christian W. Marcelo, admitted *pro hac vice*
255 South Orange Ave., Suite               CMarcelo@perkinscoie.com
1401                                       Caleb Bacos, admitted *pro hac vice*
Post Office Box 3791                       CBacos@perkinscoie.com
Orlando, FL  32802-3791                    PERKINS COIE LLP
Telephone: 407.841.2330                    1201 Third Avenue, Suite 4900
Facsimile: 407.841.2343                    Seattle, Washington 98101-3099
bgilchrist@allendyer.com                   Telephone: +1.206.359.8000

                                           *Attorneys for Defendant*


## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2023, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system, which will send notification of

such filing to counsel of record

Dated:  November 17, 2023              s/  *William C. Rava*
                                           William C. Rava