UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LINCARE HOLDINGS INC. and
LINCARE LICENSING INC.,

    Plaintiffs,

v.                        Case No. 8:22-cv-2349-VMC-AEP

DOXO, INC.,

    Defendant.
_____/

**ORDER**

This matter is before the Court on consideration of Defendant Doxo, Inc.'s sealed Motion to Exclude Plaintiffs' Experts' Opinions (Doc. # 79), Plaintiffs Lincare Holdings Inc. and Lincare Licensing Inc.'s sealed Daubert Motion to Exclude Defendant's Expert Theo Mandel, PhD (Doc. # 81), and Plaintiffs' sealed Daubert Motion to Exclude Certain Opinions of Defendant's Rebuttal Expert Jeff Rushton (Doc. # 82), all filed on November 17, 2023. The Motions have been fully briefed. (Doc. ## 91, 93-95). For the reasons that follow, Doxo's Motion is granted in part and denied in part, and Plaintiffs' Motions are denied.

**I. Background**

Plaintiffs initiated this action against Doxo on October 13, 2022, asserting claims for trademark and service mark

1

infringement in violation of Section 32 of the Lanham Act (Count 1); false representation and false designation of origin in violation of Section 43(a) of the Lanham Act (Count 2); unfair competition in violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count 3); trademark infringement, trade name infringement, and unfair competition under Florida common law (Count 4); and tortious interference with business relationships (Count 5). During discovery, the parties retained various experts.

Now, the parties seek to exclude certain experts of the opposing party. (Doc. ## 79, 81, 82). Both sides have responded (Doc. ## 91, 93-95), and the Motions are ripe for review.

## II. **Legal Standard**

Federal Rule of Evidence 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

2

Implementing Rule 702, Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993), requires district courts to ensure that any scientific testimony or evidence admitted is both relevant and reliable. See Id. at 589-90. The Daubert analysis also applies to non-scientific expert testimony. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999). District courts must conduct this gatekeeping function "to ensure that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation 'expert testimony.'" Rink v. Cheminova, Inc., 400 F.3d 1286, 1291 (11th Cir. 2005).

The Eleventh Circuit "requires trial courts acting as gatekeepers to engage in a 'rigorous three-part inquiry.'" Hendrix v. Evenflo Co., 609 F.3d 1183, 1194 (11th Cir. 2010). The district court must assess whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Id. The proponent of the expert testimony must show, by a preponderance of the evidence, that the testimony satisfies each requirement. Id.

3

### 1. Qualifications

The first question under Daubert is whether an expert is qualified to testify competently regarding the matters he or she intends to address. City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 563 (11th Cir. 1998). An expert may be qualified "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "Determining whether a witness is qualified to testify as an expert 'requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony.'" Clena Invs., Inc. v. XL Specialty Ins. Co., 280 F.R.D. 653, 661 (S.D. Fla. 2012) (quoting Jack v. Glaxo Wellcome, Inc., 239 F. Supp. 2d 1308, 1314-16 (N.D. Ga. 2002)).

"This inquiry is not stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility." Id. (citations and internal quotation marks omitted). The Court is mindful that its "gatekeeper role under Daubert 'is not intended to supplant the adversary system or the role of the jury.'" Maiz v. Virani, 253 F.3d 641, 666 (11th Cir. 2001) (quoting Allison v. McGhan, 184 F.3d 1300, 1311 (11th Cir. 1999)).

4

### 2. Reliability

The second question is whether an expert's methodology is reliable. "Exactly *how* reliability is evaluated may vary from case to case, but what remains constant is the requirement that the trial judge evaluate the reliability of the testimony before allowing its admission at trial." United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004) (citing Fed. R. Evid. 702 advisory committee's note to 2000 amendment). There are four recognized, yet non-exhaustive, factors a district court may consider in evaluating reliability:

> (1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the technique has been subjected to peer review and publication; (3) the known and potential error rate of the methodology; and (4) whether the technique has been generally accepted in the proper scientific community.

Seamon v. Remington Arms Co., 813 F.3d 983, 988 (11th Cir. 2016) (citations omitted). A district court can take other relevant factors into account as well. Id. (citations omitted).

"If the [expert] witness is relying solely or primarily on experience, then," in establishing reliability, "the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis

5

for the opinion, and how that experience is reliably applied to the facts." Frazier, 387 F.3d at 1261 (citation and internal quotation marks omitted). The Court's analysis as to reliability "focus[es] 'solely on principles and methodology, not on the conclusions that they generate.'" Seamon, 813 F.3d at 988 (citation omitted).

### 3. Assistance to Trier of Fact

Finally, expert testimony must also assist the trier of fact. Fed. R. Evid. 702. "By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." Frazier, 387 F.3d at 1262 (citation omitted). "[T]he court must 'ensure that the proposed expert testimony is "relevant to the task at hand," . . . i.e., that it logically advances a material aspect of the proposing party's case.'" Allison v. McGhan, 184 F.3d 1300, 1312 (11th Cir. 1999) (citation omitted).

So, while "[t]he 'basic standard of relevance . . . is a liberal one,' Daubert, 509 U.S. at 587, . . .[,] if an expert opinion does not have a 'valid scientific connection to the pertinent inquiry[,]' it should be excluded because there is no 'fit.'" Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care Corp., 582 F.3d 1227, 1232 (11th Cir. 2009) (citations omitted). "Proffered expert testimony generally

6

will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." Frazier, 387 F.3d at 1262-63 (citation omitted).

"No witness may offer legal conclusions or testify to the legal implications of conduct." Dudash v. S.-Owners Ins. Co., No. 8:16-cv-290-JDM-AEP, 2017 WL 1969671, at *2 (M.D. Fla. May 12, 2017); see also Washington v. City of Waldo, No. 1:15CV73-MW/GRJ, 2016 WL 3545909, at *3 (N.D. Fla. Mar. 1, 2016) ("[A] witness typically may not 'give purely legal conclusions,' such as that an officer lacked probable cause to arrest, or that a search conducted without a warrant violated the Fourth Amendment, as such conclusory testimony would 'tell the jury what result to reach' on ultimate issues only the jury should resolve." (citations omitted)). But, the Eleventh Circuit has acknowledged that "the distinction between whether challenged testimony is either an admissible factual opinion or an inadmissible legal conclusion is not always easy to perceive." Hanson v. Waller, 888 F.2d 806, 811 (11th Cir. 1989). Additionally, "the mere reference to a term with legal significance in an expert opinion does not necessarily transform the opinion into an inadmissible legal conclusion." Feldman v. Target Corp., No. 3:19-cv-419-MMH-PDB, 2021 WL 1172794, at *3 (M.D. Fla. Mar. 29, 2021).

### III. Analysis

The Court will address each challenged expert separately.

#### 1. Peter Kent

Doxo seeks to exclude the opinions expressed in Mr. Kent's expert report in full. (Doc. # 79 at 2, 5-12). According to Doxo, Mr. Kent lacks qualifications to opine about consumer confusion, has an unreliable methodology, offers some improper legal conclusions, and otherwise offers unhelpful opinions. (Id. at 5).

The Court rejects the majority of Doxo's argument. Mr. Kent is qualified to opine concerning website design, online marketing, and search engine optimization (SEO), given his decades of experience in this field and his publications on SEO and the internet generally. (Kent Report at 3-5 & Ex. A); see Georgian v. Zodiac Grp., Inc., No. 10-CIV-60037, 2011 WL 13214041, at *3 (S.D. Fla. June 24, 2011) (finding an expert qualified to opine about online directories and potential confusion caused by them, where the expert had "ten years of experience in online marketing with a specialty in search marketing strategy" and had "created an online marketing program for a start-up company from scratch").

8

Furthermore, the Court does not consider his methodology unreliable. Here, Mr. Kent has applied his experience to his review of relevant materials, including, among other things, Doxo's website, various search engines, and FTC reports. (Kent Report at 5-41 & Ex. B). He sufficiently explains how his experience, combined with his review of materials relevant to the case, led to his conclusions. See Karpilovsky v. All Web Leads, Inc., No. 17 C 1307, 2018 WL 3108884, at *4 (N.D. Ill. June 25, 2018) ("As with Young's 'best practices opinion' described above, the basis for the 'typical user opinion' is Young's considerable experience in the website design industry. He admits he conducted no empirical testing of how typical users *of AWL's site* actually behaved. But again, Young may present expert opinions predicated upon his years of experience in web design."); Dudash, 2017 WL 1969671, at *3 (denying a Daubert motion to exclude an insurance expert and stating that, as "[h]er opinions were formulated based on her review of the record," the "argument that her review is unreliable is unpersuasive"). This includes his opinions reached after review of the FTC's reports.

Additionally, most of Mr. Kent's opinions will be helpful to the jury, who are likely unfamiliar with website design, SEO, and pay-per-click advertising techniques. See

9

Johnston v. Borders, No. 6:15-cv-936-PGB-TBS, 2018 WL 8244335, at *3 (M.D. Fla. May 2, 2018) (finding that expert's "testimony will be of assistance to the jury" concerning "how search engines operate on the internet, [and] which keywords are most likely to produce relevant internet history").

Mr. Kent, however, may not render legal conclusions, such as that Doxo's website creates a likelihood of confusion or that Doxo's alleged infringement was willful. See Hyde Park Storage Suites Daytona, LLC v. Crown Park Storage Suites, LLC, 631 F. Supp. 3d 1203, 1221 (M.D. Fla. 2022) (excluding expert opinion "that there is a risk of consumer confusion" because such testimony "usurps the role of both the judge and the jury"). Thus, the Motion is granted in part and denied in part as to Mr. Kent.

### 2. Sarah Butler

Doxo next seeks to exclude the opinions expressed in Ms. Butler's expert report in full, in which Ms. Butler describes the consumer confusion survey she conducted for the LINCARE mark. (Doc. # 79 at 2, 12-23). Relying on the opinions of its rebuttal expert Mr. Sowers, Doxo argues that Ms. Butler's opinions lack reliable methodology. (Id. at 12-23). According to Doxo, Ms. Butler's survey contains numerous flaws concerning the survey population, the marketplace conditions,

10

the control group, and the allegedly vague questions asked. (Id.).

The Motion is denied as to Ms. Butler. Although the Court understands Doxo's arguments, Ms. Butler's methodology in conducting her survey is reliable enough for it to be presented to the jury. Indeed, any alleged flaws in Ms. Butler's methodology go to the weight to be accorded her survey, not its admissibility. See Jellibeans, Inc. v. Skating Clubs of Georgia, Inc., 716 F.2d 833, 844 (11th Cir. 1983) (explaining that a survey's technical deficiencies, such as "(1) poor sampling; (2) inexperienced interviewers; (3) poorly designed questions; and (4) other errors in execution," go to "the survey's weight . . . and not its admissibility"); Pods Enters., Inc. v. U-Haul Int'l, Inc., No. 8:12-cv-01479-JDW-MAP, 2014 WL 2625297, at *2-3 (M.D. Fla. June 12, 2014) ("PEI perceives multiple technical deficiencies in Dr. Wood's survey, including an improper universe of respondents and improper questioning. Such technical deficiencies go to the weight of Dr. Wood's opinions, not their admissibility.").

Furthermore, Doxo may raise these issues during cross-examination or through the testimony of its rebuttal expert. See Maiz, 253 F.3d at 666 ("Vigorous cross-examination,

presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking [debatable] but admissible evidence." (citations and internal quotation marks omitted)).

### 3. Kevin Kwan

Doxo also seeks to exclude Mr. Kwan's "opinion on prospective corrective advertising damages" because this opinion "lacks any expert analysis and Mr. Kwan used no 'expertise' in reaching this conclusion." (Doc. # 79 at 23). Doxo points out that Mr. Kwan admits that he is not an expert in corrective advertising. (Id. at 24). Rather, Mr. Kwan "assumed, based on [Plaintiffs'] counsel's instruction, what the damages period would be." (Kwan Depo. at 61:14-18). Then, he "assumed what the daily spend on [corrective] advertising would be[.]" (Id. at 61:24-62:1). Finally, to calculate the alleged damages, he "multiplied the assumption of the damages period by the assumption of the daily spend[.]" (Id. at 62:2-5). Doxo reasons that Mr. Kwan's "opinion on this issue thus requires no expertise, and Mr. Kwan used none in reaching his conclusion." (Doc. # 79 at 24).

The Court is not persuaded. Mr. Kwan is a damages expert and thus may calculate various types of damages applicable in this case, including corrective advertising damages. See

12

Aronowitz v. Health-Chem Corp., 513 F.3d 1229, 1241 (11th Cir. 2008) ("[D]amages sustained by the plaintiff include all elements of injury to the business of the trademark owner proximately resulting from the infringer's wrongful acts such as the costs of corrective advertising or injury to business reputation or goodwill." (citations and internal quotation marks omitted)).

Furthermore, in his report, Mr. Kwan sufficiently explains how he calculated the costs of corrective advertising: he "analyzed Defendant's Google Ads and Microsoft Advertising spending history and calculated the average daily spend by provider entity," which broke down to "$20.72 and $2.04 for Google Ads and Microsoft Advertising, respectively." (Kwan Report at ¶ 33). He then calculated the corrective advertising costs based on the assumption that "the daily cost of prospective corrective advertising would be equivalent to Defendant's historical daily spend from September 17, 2021, the date Plaintiffs sent their initial cease-and-desist letter to Defendant, and end on the date of the Original Kwan Report, a period of 722 days." (Id. at ¶ 34). Mr. Kwan had a basis for his assumption that the 722-day infringement period was appropriate for his corrective damages calculation. See Punch Clock, Inc. v. Smart Software

13

Dev., 553 F. Supp. 2d 1353, 1359 (S.D. Fla. 2008) ("The Court also finds that seven years of corrective advertising is the appropriate measure of damages, due to the fact that Defendant's willful and blatant infringement of Plaintiff's mark and promotion of its own business with that mark has been ongoing for at least that long.").

Vigorous cross-examination — rather than exclusion — is the proper means of challenging Mr. Kwan's opinions. The Motion is denied as to Mr. Kwan.

### 4. Dr. Theo Mandel

For their part, Plaintiffs move to exclude Doxo's expert Dr. Mandel "because each of his opinions are irrelevant to the claims at issue or are not properly qualified." (Doc. # 81 at 1). "Specifically, his opinions on the quality of Lincare's website, the quality of Lincare's search engine optimization ('SEO') techniques, and the quality of Doxo's website are irrelevant because they have nothing to do with any of the claims or defenses in this case, namely, whether or not Doxo's use of Lincare's trademarks and trade names causes confusion among Lincare bill payers, or is somehow permitted." (Id.). Plaintiffs further argue that Dr. Mandel "is not qualified to opine on Lincare's SEO techniques and

14

practices because, as he admitted, he is not an SEO expert." (Id. at 1-2).

As for his qualifications, it is true that Dr. Mandel is not specifically an expert in SEO. He is, however, an expert in web design and consumer psychology, given his Ph.D. in Cognitive and Quantitative Psychology and his decades of experience researching and designing websites and software systems to be efficient and easy-to-use for consumers. (Mandel Report at 1-4). Thus, he is qualified to opine on issues regarding the user interface and related features of both parties' websites. Dr. Mandel is also qualified to address consumer behavior in conducting web searches and how consumers may perceive the search results. In so holding, the Court emphasizes that the qualifications inquiry "is not stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility." Clena Invs., Inc., 280 F.R.D. at 661 (citations and internal quotation marks omitted).

Likewise, the Court rejects Plaintiffs' argument concerning the relevance of Dr. Mandel's opinions. "To be relevant, expert testimony must be 'sufficiently tied to the facts of the case.' In other words, the evidence must have a

15

'valid . . . connection to the disputed facts in the case' and 'logically advance [] a material aspect of the proposing party's case.'" Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc., No. 1:04-CV-1082 TWT, 2006 WL 1663357, at *4 (N.D. Ga. June 14, 2006) (citations omitted), aff'd, 496 F.3d 1231 (11th Cir. 2007). "This relevance consideration is often referred to as 'fit.'" Id.

Here, Dr. Mandel's opinions regarding the Lincare website and Plaintiffs' SEO techniques are relevant to the issue of mitigation of damages. See Malibu Media, LLC v. Zumbo, No. 2:13-cv-729-JES-DNF, 2014 WL 2742830, at *3 (M.D. Fla. June 17, 2014) (declining to strike an affirmative defense of failure to mitigate damages in a copyright infringement case, even where plaintiff sought statutory damages rather than actual damages). His opinions are also arguably relevant to whether Plaintiffs' conduct — rather than Doxo's use of the trademarks — is responsible for any actual consumer confusion that arose. (Doc. # 93 at 11); see Welding Servs., Inc. v. Forman, 509 F.3d 1351, 1361 (11th Cir. 2007) (suggesting that any actual confusion must "have arisen because of" the defendant's use of the trademarks).

The Court is similarly not convinced that Dr. Mandel's opinions about Doxo's website are irrelevant. Indeed, these

16

opinions are relevant to the likelihood of consumer confusion — a central issue to the trademark infringement claims. Doxo is correct that "Dr. Mandel's report pointedly discusses different visual elements of Doxo's biller pages before concluding that 'users in the Doxo website will scan and read' disclaimers and other information on Doxo's biller pages relevant to the parties." (Doc. # 93 at 9-10).

Given Dr. Mandel's qualifications and the relevance of his opinions, the Motion is denied.

### 5. Jeff Rushton

Plaintiffs next seek to exclude some of Doxo's expert Mr. Rushton's opinions on the quality of Lincare's websites and SEO, search engine marketing, and pay per click advertising, as being unhelpful to the finder of fact. (Doc. # 82). According to Plaintiffs, these opinions are "irrelevant and unhelpful because they have nothing to do with any of the claims or defenses in this case, namely, whether or not Doxo's use of Lincare's trademarks and trade names causes confusion among Lincare bill payers, or is somehow permitted." (Id. at 1-2). They argue that "[w]hether or not Lincare could make improvements to its own online billing platform or SEO, [pay per click advertising], and

17

[search engine marketing] has no bearing on whether or not Doxo is infringing Lincare's trademarks." (Id. at 4).

The Court disagrees. Again, to be relevant, expert testimony "must have a 'valid . . . connection to the disputed facts in the case' and 'logically advance [] a material aspect of the proposing party's case.'" Optimum Techs., Inc., 2006 WL 1663357, at *4 (citation omitted). Here, Mr. Rushton's opinions are relevant as rebuttal expert opinions to Plaintiffs' expert Mr. Kent, who also addressed SEO and search engine marketing.

More importantly, just as with Dr. Mandel's opinions, the Court agrees with Doxo that Mr. Rushton's opinions are at least relevant to the issue of damages caused by any trademark infringement. As Doxo explains, "Lincare's theory of damages is that it has been harmed by strained relationships with customers who used Doxo to pay Lincare bills" but "Lincare customers may choose to pay Lincare through Doxo because Lincare's direct online payment process is unclear and misleading." (Doc. # 95 at 9-10). Furthermore, Mr. Rushton's opinions about Lincare's website and SEO are relevant to Plaintiffs' duty to mitigate damages. (Id. at 10-11).

The Motion is denied.

Accordingly, it is hereby

18

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Doxo, Inc.'s sealed Motion to Exclude Plaintiffs' Experts' Opinions (Doc. # 79) is **GRANTED** in part and **DENIED** in part to the extent explained in this Order.

(2) Plaintiffs Lincare Holdings Inc. and Lincare Licensing Inc.'s sealed Daubert Motion to Exclude Defendant's Expert Theo Mandel, PhD (Doc. # 81) is **DENIED**.

(3) Plaintiffs' sealed Daubert Motion to Exclude Certain Opinions of Defendant's Rebuttal Expert Jeff Rushton (Doc. # 82) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 23rd day of January, 2024.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE