UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LINCARE HOLDINGS INC. and
LINCARE LICENSING INC.,

    Plaintiffs,

v.                        Case No. 8:22-cv-2349-VMC-AEP

DOXO, INC.,

    Defendant.
_____/

**ORDER**

This matter is before the Court on consideration of Defendant Doxo, Inc.'s Motions in Limine (Doc. # 120), filed on February 9, 2024. Plaintiffs Lincare Holdings Inc. and Lincare Licensing Inc. responded on February 23, 2024. (Doc. # 125). As explained below, the Motion is denied.

**I.    Background**

Plaintiffs are national health care companies that provide patients "with top quality treatments and durable medical equipment." (Doc. # 107 at ¶ 3). Plaintiffs' "portfolio includes healthcare goods and services offered in connection with the trademarks LINCARE, mdINR, CONVACARE, AMERICAN HOMEPATIENT, PREFERRED HOMECARE, and the trade name SPECIALIZED MEDICAL SERVICES." (Id.). Doxo runs an all-in-one bill pay service that allows users to pay bills to over

1

120,000 billers using Doxo's website. (Doc. # 78-1 at ¶ 2). Doxo, although unaffiliated with Plaintiffs, includes Plaintiffs as billers that can be paid through Doxo's website. Doxo's biller pages for Plaintiffs include use of Plaintiffs' trademarks and trade name.

Plaintiffs initiated this action against Doxo on October 13, 2022, asserting claims for trademark and service mark infringement in violation of Section 32 of the Lanham Act (Count 1); false representation and false designation of origin in violation of Section 43(a) of the Lanham Act (Count 2); unfair competition in violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count 3); trademark infringement, trade name infringement, and unfair competition under Florida common law (Count 4); and tortious interference with business relationships (Count 5). (Doc. # 1). The case proceeded through discovery. The Court has ruled on the parties' Daubert motions and Doxo's motion for summary judgment. (Doc. ## 116, 119).

Now, Doxo seeks to exclude three categories of evidence from introduction at trial. (Doc. # 120). The Motion is fully briefed and ripe for review. (Doc. # 125).

2

II. **Legal Standard**

"A motion in limine presents a pretrial issue of admissibility of evidence that is likely to arise at trial, and as such, the order, like any other interlocutory order, remains subject to reconsideration by the court throughout the trial." In re Seroquel Prods. Liab. Litig., Nos. 6:06-md-1769-ACC-DAB, 6:07-cv-15733-ACC-DAB, 2009 WL 260989, at *1 (M.D. Fla. Feb. 4, 2009). "The real purpose of a motion in limine is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence which may irretrievably [a]ffect the fairness of the trial." Id. (internal quotation omitted). "A court has the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds." Id. (internal quotation omitted).

"A motion in limine is not the proper vehicle to resolve substantive issues, to test issues of law, or to address or narrow the issues to be tried." LSQ Funding Grp. v. EDS Field Servs., 879 F. Supp. 2d 1320, 1337 (M.D. Fla. 2012) (citing Royal Indem. Co. v. Liberty Mut. Fire Ins. Co., No. 07-80172-CIV, 2008 WL 2323900, at *1 (S.D. Fla. June 5, 2008)). "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at

3

trial." In re Seroquel, 2009 WL 260989, at *1 (internal quotation marks omitted). "Instead, denial of the motion means the court cannot determine whether the evidence in question should be excluded outside the trial context." Id. "The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion in limine." Id.

Federal Rule of Civil Procedure 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Irrelevant evidence is inadmissible. Fed. R. Evid. 402. All relevant evidence is admissible unless "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 402, 403; United States v. Ross, 33 F.3d 1507, 1524 (11th Cir. 1994). Use of Rule 403 to exclude relevant evidence is an "extraordinary remedy" whose "major function . . . is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial

4

effect." United States v. Grant, 256 F.3d 1146, 1155 (11th Cir. 2001).

The district court has broad discretion to determine the admissibility of evidence, and the appellate court will not disturb this Court's judgment absent a clear abuse of discretion. United States v. McLean, 138 F.3d 1398, 1403 (11th Cir. 1998); see also United States v. Jernigan, 341 F.3d 1273, 1285 (11th Cir. 2003) ("Inherent in this standard is the firm recognition that there are difficult evidentiary rulings that turn on matters uniquely within the purview of the district court, which has first-hand access to documentary evidence and is physically proximate to testifying witnesses and the jury.").

## III. Analysis

Doxo seeks to exclude three categories of evidence from trial. The Court will address each separately.

### A. Plaintiffs' Call Logs/Notes

First, Doxo argues that the Court should exclude "Lincare's various call logs prepared by its customer support agents, which constitute unreliable, inadmissible, and often multilayered hearsay." (Doc. # 120 at 1). "The call logs are neither recordings nor verbatim transcriptions of actual words spoken by Lincare's customers. Instead, they reflect

5

the employees' characterizations of the conversation, biased by the employees' express instructions from their superiors to uncover evidence of confusion in support of this case." (Id. at 2).

The Motion is denied on this issue. The call logs/notes contain two layers of statements: (1) the notes written by Plaintiffs' customer representatives, for which the customer representatives are the declarants; and (2) the statements of Plaintiffs' customers made to and recorded by the customer representatives, for which the customers are the declarants. Under Federal Rule of Evidence 805, "[h]earsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule." Fed. R. Evid. 805. Thus, both layers of double hearsay must satisfy a hearsay exception to be admissible. Alternatively, there would be no hearsay within hearsay problem if the customers' statements recorded within the notes are not hearsay.

The Court agrees with Plaintiffs that the customers' statements to Plaintiffs' customer representatives are not hearsay or are subject to the state of mind exception to hearsay. "The majority of courts have held either that testimony of plaintiff's employees as to confused customers

6

is not hearsay because it is not offered to prove the truth of any customer's assertion or is admissible under an exception to the hearsay rule." 4 McCarthy on Trademarks and Unfair Competition § 23:15 (5th ed. 2017); see also A.I.G. Agency, Inc. v. Am. Int'l Grp., Inc., 33 F.4th 1031, 1036 n.1 (8th Cir. 2022) ("These records [of telephone conversations] are not inadmissible hearsay as International suggests because they were not presented to prove the truth of the callers' statements, but to show the callers' states of mind at the time of the calls."); Fun-Damental Too, Ltd. v. Gemmy Indus. Corp., 111 F.3d 993, 1003-04 (2d Cir. 1997) ("There is no hearsay problem. . . . The testimony in question was not offered to prove that Fun-Damental was actually selling to some retailers at lower prices, but was probative of the declarant's confusion."); Kos Pharms., Inc. v. Andrx Corp., 369 F.3d 700, 719 (3d Cir. 2004) ("The first level of hearsay analysis concerns the underlying statements said to show confusion. Such statements fall into two categories — those exhibiting confusion and those proclaiming it. Statements of the first type (Dr. A says 'We have plenty of Advicor' but points to Altocor samples) are not hearsay because they are not submitted for their truth; indeed, it is their falsity that shows the speaker's confusion. Statements of the second

7

type (Dr. B says 'I find these names confusing.') are admissible as 'statement[s] of the declarant's then existing state of mind.' Fed. R. Civ. P. 803(3)."); Citizens Fin. Grp., Inc. v. Citizens Nat. Bank of Evans City, 383 F.3d 110, 133 (3d Cir. 2004) ("In this case, the tellers described what they saw and the action they took with respect to customers who appeared to be confused with respect to CFG and CNBEC. This is not hearsay. Further, Fed. R. Evid. 803(3) allows statements, otherwise excluded as hearsay, to be received to show the declarant's then-existing state of mind. To the extent that any of the customers' statements may be deemed hearsay, we believe Rule 803(3) would apply." (citation omitted)); You Fit, Inc. v. Pleasanton Fitness, LLC, No. 8:12-cv-1917-JDW-EAJ, 2013 WL 521784, at *5 n.13 (M.D. Fla. Feb. 11, 2013) ("[T]he comments [posted on yelp.com] are not hearsay because they are not being used to prove the truth of the matter asserted in the comment. Rather, Plaintiffs invoke the comments to demonstrate the consumer's confusion, a then-existing mental state of the declarant who posted the comments." (citing Fed. R. Evid. 801(c)(2) & 803(3))).

The Fifth Circuit persuasively explained its finding that testimony about phone calls from confused customers was admissible:

8

> Armco Burglar Alarm contends that the trial judge committed reversible error in admitting this evidence because it was hearsay. The trial judge, however, correctly held this evidence admissible because it was not being offered "to prove the truth of the matter asserted." F. R. Evid. 801(c). The testimony about phone calls and conversations was not being offered to show that Armco and Armco Burglar Alarm were the same business, but to show that people *thought* they were. Armco Burglar Alarm claims that the statements were the equivalent of "I believe that defendant and plaintiff are one and the same or are related," and were offered to prove the truth of the matter asserted, namely that the declarant actually did hold such a belief. Even so, they would be admissible under the state of mind exception. F. R. Evid. 803(3).

Armco, Inc. v. Armco Burglar Alarm Co., 693 F.2d 1155, 1160 n.10 (5th Cir. 1982); see also Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc., 851 F.3d 440, 458 (5th Cir. 2017) ("We have previously rejected hearsay objections to indirect testimony about actual confusion, explaining that such evidence is not offered for the truth of the matter asserted but rather to show effect on consumers, namely, confusion. Therefore, SPSI's evidence of actual confusion is not entitled to any less weight by virtue of its source. (citing Armco, Inc., 693 F.2d at 1160 & n.10)). This Court agrees with the majority approach and finds that the customers' statements, which are embedded in the call logs/notes, are not hearsay or, alternatively, satisfy the state of mind exception.

9

As for the call logs/notes written by the customer representatives, the business records exception under Rule 803(6) applies. Rule 803(6) provides:

> A record of an act, event, condition, opinion, or diagnosis [is admissible] if:
>
> (A) the record was made at or near the time by — or from information transmitted by — someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

Here, Plaintiffs' call logs/notes are admissible business records. As noted in the declaration of Susan Johnson (Plaintiffs' Regional Vice President of Billing), these notes are contemporaneously prepared whenever a patient contacts Lincare "as a regular part of Lincare's business operations." (Doc. # 126 at ¶ 7). Plaintiffs' "call agents are extensively trained on how to take contemporaneous and accurate records."

10

(Id.). The notes "are medical records created and kept by Lincare in the ordinary course of its business and they are relied upon at all times by Lincare in conducting its entire business" and "have been kept for many years and long before the dispute with Doxo." (Id. at ¶ 8). The "notes summarize the patient's interaction with the agent when it occurs in a manner that allows authorized personnel, including [Johnson], to review and consult the records and quickly understand the important aspects of the patient's concerns or anything else addressed during the interaction." (Id. at ¶ 9). According to Johnson, "this method of documenting patient calls is consistent with best practices in the healthcare field" and the notes "can never be deleted." (Id. at ¶¶ 10-11). In short, the notes satisfy the requirements of Rule 803(6)(A)-(D).

Additionally, Doxo has not convinced the Court at this time that "the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6)(E). Johnson's declaration convincingly addresses why certain notes mention Doxo and the consumer confusion issue:

> Where and when it is appropriate to do so, Lincare's agents sometimes try to discern whether the above callers understand whom they are calling and speaking with. In doing so, they may note that Doxo and Lincare are not the same company nor are they

11

> affiliated with each other. In particular, it is important for agents to explain to patients what Lincare can and cannot do. For example, Lincare cannot address payments made through Doxo that have not reached Lincare, problems attributable to Doxo, or fees for paying bills charged by Doxo. Lincare's agents do not search for "confusion" or anything else as part of their jobs. They have no agenda in preparing these medical records other than to accurately summarize patients' questions, concerns, thoughts or beliefs and the interaction with the agents about the same. This is true whether the topic of the call is Doxo or any other company.

(Doc. # 126 at ¶ 24). Thus, the notes are sufficiently trustworthy to be admitted. The Motion is denied as to this category of evidence.

### B. Third-Party Disputes

Next, Doxo seeks to exclude "all evidence of, or testimony relating to, cease and desist letters sent to Doxo by third-party billers, as well as any third-party complaints or disputes that involve marks not at issue here and were not fully adjudicated." (Doc. # 120 at 7). According to Doxo, this evidence is "irrelevant" because "documents specific to one trademark are largely irrelevant to a claim for infringement of an entirely separate mark." (Id. at 7-8). Additionally, Doxo maintains that mere complaints by third parties about alleged infringement are not relevant to the willfulness of Doxo's infringement. (Id. at 9). While Doxo admits that "[f]ormal findings of past infringement may be

12

relevant" to willfulness, it emphasizes that no formal findings are at issue here. (Id.).

The Court disagrees with Doxo as to the issues of willfulness, intent, and bad faith. The cease-and-desist letters and other third-party disputes put Doxo on notice that other businesses believed that Doxo's use of their trademarks on its website infringed their trademarks. But — as Plaintiffs tell it — Doxo continued to prominently use various businesses' trademarks, including Plaintiffs' trademarks, on its website in the same way despite this notice.

Thus, these letters are relevant to Doxo's intent, bad faith, and willfulness in using Plaintiffs' trademarks. See Gucci Am., Inc. v. Guess?, Inc., 858 F. Supp. 2d 250, 254 (S.D.N.Y. 2012) ("Because Gucci's claim against MFF for money damages requires proof of bad faith, evidence that supports such a finding is both relevant and material. For this reason, evidence of the American Disputes — including the cease-and-desist letters — is presumptively admissible under Federal Rule of Evidence 402."); Johnson & Johnson Consumer Cos., Inc. v. Aini, 540 F. Supp. 2d 374, 392 (E.D.N.Y. 2008) ("[T]he court takes notice that six (and possibly more) separate federal actions have been brought against some or all of the

defendants in this action for trademark infringement. While these other cases alone do not definitively demonstrate that Defendants acted in bad faith here with respect to Plaintiff's trademark, they do present some evidence of Defendants' intent with respect to the AMBI Green and Red goods that they acquired and sold. At a minimum, these lawsuits should have served to instruct Defendants to exercise greater diligence in ensuring that the products they sold, particularly those they received from questionable sources, did not infringe on others' trademarks."). The Motion is denied as to this category of evidence.

### C. Ms. Butler's Testimony on Certain Marks

Finally, Doxo contends that Plaintiffs' survey expert, Sarah Butler, should not be able to offer opinions regarding Plaintiffs' trademarks besides the LINCARE mark. (Doc. # 120 at 11). It emphasizes that Ms. Butler's survey only involved the LINCARE mark and, thus, her opinion stated in here report that there is "no reason to believe [that her] conclusions as to confusion would differ for" Plaintiffs' other marks should not be admissible. (Id.). Doxo notably does not address the Federal Rules of Evidence in support of this section of its Motion. (Id. at 11-12). Instead, Doxo cites law regarding expert reports and at least one case deciding a Daubert motion

14

rather than a motion in limine. See (Doc. # 120 at 12) (citing Dynamic Motion Rides GMBH v. Universal City Dev. Partners Ltd., No. 6:21-cv-752-RBD-LHP, 2023 WL 2681902, at *7 (M.D. Fla. Mar. 13, 2023) (granting a Daubert motion and excluding an expert's opinion as "unhelpful")).

Importantly, the Court has already denied Doxo's Daubert motion to exclude Ms. Butler's expert testimony, which among other things raised the same argument regarding Ms. Butler's opinion on the non-LINCARE marks. (Doc. # 79 at 22-23; Doc. # 116 at 10-12). In that Order, the Court held that Ms. Butler's methodology in conducting her survey and reaching her opinions was "reliable enough for it to be presented" to the factfinder, with "any alleged flaws in Ms. Butler's methodology go[ing] to the weight to be accorded her survey, not its admissibility." (Doc. # 116 at 11). Thus, the Court has already rejected a Daubert challenge to Ms. Butler's opinions and will not reconsider that ruling now.

To the extent Doxo could be interpreted as raising a challenge to the admissibility of Ms. Butler's opinion under the Federal Rules of Evidence, that challenge likewise fails. Ms. Butler's opinion regarding these trademarks is relevant to the trademark infringement claims and exclusion under Rule 403 is unwarranted. Doxo can cross-examine Ms. Butler and

raise arguments at trial about the weight to be accorded to her opinions.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Doxo, Inc.'s Motion in Limine (Doc. # 120) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 29th day of February, 2024.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE